**MAHAFFY AND HARDER ENGINEERING COMPANY, Plaintiff,**

v.

**STANDARD PACKAGING CORPORATION, Defendant.**

Civ. A. No. 3320.

United States District Court
E. D. Virginia,
at Alexandria.

Nov. 30, 1966.

---

Curtis, Morris & Safford, New York City, Boothe, Dudley, Koontz & Blankingship, Alexandria, Va., for plaintiff.

Brumbaugh, Free, Graves & Donohue, New York City, Hunton, Williams, Gay, Powell & Williams, Richmond, Va., for defendant.

## MEMORANDUM OPINION

OREN R. LEWIS, District Judge.

This suit was brought by Mahaffy and Harder Engineering Company for infringement of its patent No. 3,125,839 (hereinafter referred to as the Mahaffy '839 patent).

The plaintiff, a New Jersey corporation engaged in the manufacture and sale of vacuum packaging machinery, is the exclusive licensee of the Mahaffy '839 patent.

The defendant, a Virginia corporation, has manufactured for it and sells and leases several models of vacuum packaging machines, including the 6–14 type machines which allegedly infringe the Mahaffy '839 patent.

The plaintiff also charged the defendant with infringement of Mahaffy patent No. 3,126,431. It offered no proof during the trial in support of this claim and the charge of infringement as to that patent was then dismissed upon the defendant's motion.

The defendant denied the charge of infringement and further claimed the Mahaffy '839 patent was invalid for lack of invention and obviousness pursuant to § 103, 35 U.S.Code; for overclaiming and for failure to comply with § 112, 35 U.S.Code; and upon the further ground that the subject matter of the patent was on sale within the meaning of § 102(b), 35 U.S.Code, more than one year prior to the date of the application for the patent.

During the trial the claim of noninfringement was not pressed, the defendant centering its defense on invalidity.

From the record here made, the Court makes the following findings:

(1) Reid A. Mahaffy, plaintiff's president, was formerly an employee of Standard and while so employed designed and developed, along with others, Standard's 6–12 vacuum packaging machine which Standard introduced on the market in 1956.

(2) On January 23, 1959 Standard and plaintiff's predecessor, Mahaffy Engineering Company, entered into an agreement for the design and construction by Mahaffy Engineering Company at Standard's expense and the sale to Standard of a number of packaging machines which defendant designated as its 6–14 machines. These machines (hereinafter referred to as the prior art 6–14 machines) were introduced on the market and first used commercially in about September 1959.

(3) On or about September 28, 1960 Standard and Mahaffy Engineering Company entered into an agreement for the design and construction by Mahaffy Engineering of twenty frankfurter packaging machines, which defendant designated as its 6–14F machines. The machine specifications attached to the agreement provided:

"The general principles of the machine are to be similar to those of the existing MA–1 (6–14) machine excepting that the cavities are to be sized to produce packages for frankfurters, and means is to be provided for transporting the product and placing it into the cavities automatically."

(4) In both agreements (January 23, 1959 and September 28, 1960) the parties retained patent rights in their respective inventions.

(5) Mahaffy Engineering claimed proprietary rights in the Sureflow process for evacuating air from the packages produced by the 6–14F machines.

(6) The plaintiff did not, prior to the filing of this suit, claim any proprietary rights with respect to the slide seal assembly incorporated in the 6–14F machines that it built and delivered to Standard.

(7) Beginning in 1963 Standard has had its version of the 6–14 machines manufactured for it by another supplier; it is these machines which are charged with infringement of the Mahaffy '839 patent.

(8) The Mahaffy '839 patent in suit relates to an alleged improvement in the vacuum forming step of the prior art 6–14 packaging machine. In the prior art 6–14 machine, as shown in Figure 1 of the prior Mahaffy '984 patent, a film 1 is fed from a roll 2 over a series of moving trays 5, the film is heated by heater 76 and drawn by suction into the trays to form pockets in the film (vacuum forming), the product 11 to be packaged is placed in the formed portions of the film, a cover film 15 is fed from a roll 16 over the trays, and the trays are moved under a vertically reciprocating head 12 where the cover film is heat sealed to the formed film to make a package and the air is withdrawn from the package. The Mahaffy '839 patent in suit relates only to a revision in the means for drawing the film 1 into the trays and holding the film in the trays to form pockets in the film.

(9) The structure described in the Mahaffy '839 patent in suit is a slide seal assembly which includes a spring-urged slide seal 18 (see Figures 1 and 3 of the Mahaffy '839 patent) at the bottom of each moving tray and a stationary manifold 38 on which the seal slides as the tray moves from station to station. The slide seal is an assembly (see Figure 3 of the patent) of a seal element 20 which slides along the manifold in airtight contact as the tray moves from station to station, a retainer collar 26 which

holds the seal element to the bottom of the tray, a gasket 34 between the retainer collar and the seal element, and a spring 24 for pushing the seal element against the upper surface of the manifold. The manifold has a series of ports 40, 54, 60 and 64 which are connected to a source of suction so that the interior of the tray is subjected to suction while the slide seal is in registry with one of these ports and sealed off from the atmosphere while it is moving from port to port.

(10) The application of suction to the tray to form product-receiving pockets in the film is called vacuum forming and is not to be confused with the subsequent step, after the product has been inserted and the top web applied, of evacuating air from the package to form a vacuum package. The Mahaffy '839 patent in suit relates only to vacuum forming of the bottom web and does not relate to the steps of evacuating air from and sealing the package. In all of defendant's 6–14 vacuum packaging machines, relatively high vacuum levels are employed in evacuating the air from the package. Much lower vacuum levels, to provide a forming pressure of about ten pounds per square inch and presenting only rudimentary design requirements, are employed in the vacuum forming step.

(11) The stated object of the Mahaffy '839 patent is the provision of means in an "in-line" packaging machine (that is, a machine in which the trays are carried through the various operating stations in a straight line) to draw the formed film deeply in the trays for the manufacture of packages of an increased depth and capacity.

(12) The depth to which a packaging film can be drawn depends upon the physical characteristics of the film.

(13) The 6–14F machines embodying the slide seal assembly of the patent in suit were incapable of forming packages of sufficient depth to contain two layers of frankfurters until about a year after these machines were put into operation (1962). It was only then accomplished after an improved packaging film was developed.

(14) The desirability of adding a slide seal assembly at the vacuum forming stations (on the 6–14 machine) for holding vacuum as the trays progressed to successive stations was first openly discussed by Mahaffy's and Standard's representatives with Peter Eckrich & Sons on or about June 13, 1960, several months before the contract for the 6–14F machines was let.

(15) The necessary components for the slide seal assembly were designed and construction drawings prepared by Mahaffy's draftsmen during the first quarter of 1961 and were installed directly on the machines then being manufactured for the defendant without experimental or testing activity.

(16) Standard's prior art 6–14 machines, which have been in commercial use since 1959, three years before the patent in suit was applied for, have means for vacuum forming a film in a moving tray and applying a vacuum to the tray at successive stations. The vacuum forming in the prior art 6–14 machine, shown schematically in Figure 1 of the Mahaffy '984 patent, is accomplished by a vertically movable manifold 86 which carries a series of cup-like seals 85, 85a and 85b. The forming vacuum is applied to a tray by the seal 85 at the station d and reapplied to the same tray at the stations e and f by the seals 85a and 85b, respectively. The vacuum forming disclosed in the Mahaffy '839 patent in suit differs from the vacuum forming in the prior art 6–14 machine in that the bottoms of the individual trays are equipped with seal elements to slide along the manifold in airtight engagement so as to hold the forming vacuum in the tray while the tray is moving from station to station.

(17) The use of slide seals and manifolds in packaging machines for holding the forming vacuum as the trays move through successive stations is old and has been a conventional feature in Standard's 6–12 rotary vacuum packaging machines which have been in commercial use throughout the country since 1956. Standard's commercial 6–12 packaging machine is described in Standard's Mahaffy et al. patent No. 2,935,828 (referred to herein as the Mahaffy '828 patent), issued May 10, 1960 on an application filed April 16, 1957. As shown in the Mahaffy '828 patent, a film 3 (see Figure 1) is fed from a roll onto a rotating drum 4 which carries a series of trays 37 (Figures 6 and 10), the film is heated and drawn by suction into the trays to form pockets in the film, a cover film 5 is fed from a roll to the drum, a product C is fed to the pockets of the formed film and the cover film is heat-sealed to the formed film to form individual packages from which air is evacuated before the package is finally sealed.

(18) The vacuum forming slide seal assembly in the prior art 6–12 machines is illustrated in Figures 26 through 29 of the Mahaffy '828 patent and was exhibited in physical form at the trial. As there shown, a slide seal 91 rotates with the trays and slides along a stationary manifold 93 to register with a vacuum source and to seal the trays from the atmosphere as the trays move from one station to the next. The Mahaffy '828 patent did not disclose the following two features of the prior art 6–12 machines as it has operated in the field since 1956: (1) resilient mounting between the slide seal element and manifold, namely, the use of a spring working on the manifold 93 to keep the rotary slide seal and manifold in airtight engagement, and (2) the application of suction to the trays at two successive stations via a conduit (groove) in the manifold.

(19) The prior art Cloud patent No. 3,126,681, issued March 31, 1964 on an application filed December 28, 1960, discloses a "straight-line" vacuum packaging machine in which the bottoms of the trays 13 are equipped with valves 43 and the trays are advanced across a manifold 26 having a series of suction cups 18 thereon which communicate with a source of suction through the manifold. As the tray moves along the manifold, suction is applied to the trays at a series of stations by the suction cups 18 and the valves 43 operate to hold a partial vacuum

in the tray while the tray moves from station to station.

(20) Vacuum packaging machines embodying the slide seal and manifold of the patent in suit to apply the forming vacuum at successive stations and hold the vacuum between the stations perform no new function and provide no new or different result than was obtained by the rotary seal and manifold of the 6–12 packaging machine or by the valves and manifold of the machine described in the Cloud patent. The vacuum forming means of both the 6–12 and Cloud machines provided for applying the forming vacuum at successive stations and holding it between the stations.

(21) The adaptation of a slide seal for holding vacuum in the prior art 6–14 machine, as shown in the Mahaffy '839 patent in suit, should have been obvious to those skilled in the art of vacuuming and machine engineering.

(22) The Mahaffy '839 patent in suit contains a total of nineteen claims—two method claims and seventeen apparatus claims. Claim 5 reads on the method of vacuum forming that has been practiced with the prior art 6–12 machine since 1956. Claims 5 and 6 read on the method of vacuum forming disclosed in the prior art Cloud '681 patent. Claims 5 and 6 call broadly, without any reference to a slide seal, for applying vacuum to the tray or cavity at successive stations and for "trapping" the vacuum between stations and that is exactly what has been done in the prior art 6–12 machine and what is disclosed for the machine described in the prior art Cloud '681 patent.

(23) Claims 1 through 4 and 7 through 11 do not specifically call for an in-line or straight-line slide seal as disclosed in the specification of the patent in suit, and all of such claims apply just as well to machines, such as the 6–12 machine, where the trays are carried in a rotary path. Claims 1 through 4 read literally on the 6–12 rotary machine modified by placing resiliently mounted sealing elements on the rotary slide seal 91 instead of resiliently mounting the manifold 99

by spring action as was the actual practice in the prior art 6–12 machine. The patent in suit conceded that such resilient mounting of either element is only a matter of choice. See claims 12 and 13 of the patent in suit (col. 8, ll.1 to 10) where resilient mounting of either the manifold or the seal elements is literally equated and both are claimed. See also claims 14 through 19 of the patent in suit which do not call for any resilient mounting or spring action at all.

(24) Claims 7 through 11 read on the prior art 6–12 machine modified by removing the circular seal element 91 and placing resiliently mounted sealing elements on the bottoms of the trays and in sliding rotational engagement with a vacuum manifold. Such modification in the 6–12 machine, namely, to have the manifold engage directly with the trays instead of with the coaxially rotating sealing die 91, would be only a matter of choice.

(25) Claims 12 through 19 of the patent in suit read literally on an entire in-line packaging machine in which there is a slide seal between sealing elements on the trays and a vacuum manifold. Such slide seal does not perform any new function in the vacuum packaging machine. Such slide seal has no effect whatever on the structural or mechanical functioning of the rest of the machine.

(26) None of the nineteen claims of the patent in suit point out and distinctly claim what the patentees regarded as their invention.

(27) Late in 1960 Standard offered the 6–14F machine to packers for sale or lease and before May 3, 1961 Standard had executed unconditional sale and lease agreements with such packers for the 6–14F vacuum packaging machines that the plaintiff was committed to supply to Standard. One of such leases, dated December 30, 1960, was to Peter Eckrich & Sons, Inc.

(28) In addition, the 6–14F machines were to be accompanied by a new automatic feeder which would be designed by the plaintiff as auxiliary equipment

for feeding frankfurters into the 6–14F packaging machine.

(29) In December 1960 the plaintiff began the construction of the slide seal assembly in commercial form. By April 30, 1961 the plaintiff had completed the construction drawings for the components, had requisitioned such components from its suppliers, and before May 3, 1961 had assembled the slide seal components on the 6–14F machine. The slide seal assembly in its commercial form was then complete and earmarked for delivery to Standard as part of the 6–14F machine. The delay in delivery of the first 6–14F machines to Standard until September 1961 was due to further work that was required in connection with the automatic feeder and had nothing to do with the slide seal assembly which was already completed.

(30) On June 13, 1960 the plaintiff had disclosed to Standard and its customer, Peter Eckrich & Sons, Inc., a slide seal for holding vacuum in the 6–14 machine. The design and construction of the slide seal assembly for commercial and non-experimental purposes was carried out by the plaintiff during the early months of 1961 and was completed by the plaintiff before May 3, 1961. Prior to May 3, 1961 the slide seal was earmarked for Standard's 6–14F machines and Standard was obligated to pay for it.

Applying the findings here made to the conditions necessary for patentability,[1] the Court concludes that the Mahaffy '839 patent is invalid for lack of invention and obviousness (35 U.S.C., §§ 101, 102, 103) and for overclaiming (35 U.S.C., § 112.)

Plaintiff's '839 packaging machine, absent the slide seal assembly, embodied the same structure and principle of operation as disclosed by the prior 6–14 packaging machine. (See Mahaffy '984 patent 1959.)

The use of slide seals for holding vacuum is not new. See Standard 6–12 vacuum packaging machine. See also the prior art Cloud patent No. 3,126,681.

The desirability of holding the forming vacuum between stations by means of a slide seal and manifold arrangement was openly discussed by a 6–14 user with representatives of the plaintiff and the defendant as early as June of 1960. This suggested improvement was subsequently incorporated in the 6–14F machines manufactured by the plaintiff for the defendant, the design and construction of which was well within the capability of any mechanical engineer having ordinary familiarity with vacuum equipment.

The plaintiff's contentions that its '839 patent solved the problem of how to "deep draw" the forming film is without evidential support. The depth to which film can be drawn depends on the stretch characteristics of the film, not upon the depth of the forming trays or the holding of the forming vacuum between stations. "Deep draw" (1¾ inches) packages, with appropriate film have been produced on the 6–12, 6–14 and 6–14F machines.

Mahaffy claims its '839 patent covers the whole 6–14F packaging machine, yet only one improvement, the slide seal arrangement above discussed, was mentioned during this hearing. Overclaiming has long been recognized as a fatal defect in a patent. The Fourth Circuit Court of Appeals in its opinion in Heyl & Patterson, Inc. v. McDowell Co., Inc., 317 F.2d 719, stated at page 723:

"The patent is also invalid for claiming too much. The mere improvement of one portion of an apparatus does not permit a patenting of the whole. Lincoln Engineering Co. [of Illinois] v. Stewart-Warner, 303 U.S. 545, 58 S.Ct. 662, 82 L.Ed. 1008 (1938); Bassick Mfg. Co. v. [R.M.] Hollingshead [Co.], 298 U.S. 415, 56 S.Ct. 787, 80 L.Ed. 1251 (1936); Application of Hall, 208 F.2d 370, 41 CCPA 759 (C.C.P.A.1953); McGrath Holding Corp. v. Anzell, 58 F.2d 205 (2 Cir. 1932). Plaintiff, having at the very most hit upon a mechanical change to facilitate the use of the up-

1. Graham et al. v. John Deere Co. of Kansas City, et al., 3830S–1.

per end of the chute leading to the ship's hold in place of a stationary pan, patented the entire apparatus from the hopper to the gate. This is much more than any possible invention to be found in plaintiff's apparatus.

"We therefore, hold that the plaintiff's patent is invalid in that it is lacking in invention and because it claims too much."

Having concluded the patent in suit is invalid for the reasons above stated, it is not necessary that the Court determine the "on sale" defense (35 U.S.C., § 102 (b)) asserted by the defendant.

Counsel fees will not be awarded in this case.

Counsel for the defendant should prepare an appropriate order in accordance with these findings and conclusions and submit the same to counsel for the plaintiff for approval as to form; then to the Court for entry.